GRIFFIS, J.,
for the Court.
¶ 1. Gregory S. Martin filed suit against the Board of Institutions of Higher Learning of the State of Mississippi (“IHL”) for wrongful termination of an employment contract. The jury returned a verdict in favor of Martin in the amount of $10,000. IHL filed a post-trial motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial or remittitur. The trial court granted the motion for a JNOV and set aside the jury verdict.
¶ 2. On appeal, Martin argues that the trial court erred by granting IHL’s motion for a JNOV. We agree, and we reverse, render and reinstate the jury’s verdict.
FACTS
¶ 3. In 2000, Mississippi State University (“MSU”) hired Martin as its men’s intercollegiate golf coach. Martin signed a four-year employment contract with MSU, which ended on June 30, 2004. The contract provided that “[i]f this contract is terminated by the Board for cause and/or due to violation of Attachment ATH-2 no remaining salary, if any, shall be due employee.” The ATH-2 provided that “[t]he employee acknowledges that involvement in a deliberate and serious violation of any law, regulation, rule, by-law, policy or constitutional provision of ... any other governing authority may result in suspension without pay and/or termination of this contract.” (Emphasis added).
¶ 4. On March 10, 2003, Martin was terminated for violating his contract. IHL maintained that it properly terminated Martin because Martin violated MSU’s policies governing employee conduct. These policies were delineated in a document titled: “Guidelines for Employee Conduct.” IHL claimed that Martin violated this policy when Martin had an argument and altercation at Old Waverly Golf Course with Carl Sutton, a former player that Martin had removed from the team.
¶ 5. Martin testified that Sutton was on the driving range at Old Waverly, using MSU equipment. Martin also testified that he had previously asked Sutton to return the golf equipment because it would constitute a violation of the National Collegiate Athletic Association rules if Sutton kept the equipment. Martin stated that he approached Sutton on the driving range and told Sutton to return the MSU golf bag, which was in his possession, by Monday morning. Martin testified that Sutton responded by saying that he had earned the bag. The discussion between Martin and Sutton became heated, but Martin testified that he did not use any profanity.
¶ 6. Sutton then left the driving range. Twenty minutes later, Martin testified that Sutton returned with the empty golf bag. Martin claimed that Sutton shoved the empty golf bag at him. Next, Martin testified that:
I was concerned, because [Sutton] was angry. And I didn’t know what to do. I was thinking I was in a vulnerable position with the bag.... So, I pushed him away with my right arm only.... As he backed up, the bag went up his shoulder and glanced off the side of his face.
Martin testified that Sutton then said, “You hit me in the head,” and Martin replied, “No I did not.”
¶ 7. Martin testified that by his calculation, after subtracting all mitigating fac *835 tors, his wrongful termination cost him $29,100.
¶ 8. Matt Mooney, a former player on the MSU golf team, testified that Sutton came “storming over” when he approached Martin before the second argument. Mooney testified that Martin hit Sutton with the golf bag. Mooney also stated that profanity was not used during either argument. Mooney testified that Sutton said to Martin that Martin had hit him, and Martin replied: I did not hit you. Mooney also testified that after the second argument, Martin approached Mooney and told him, “I’m through.... I let him get to me.... you’re my only hope now.”
¶ 9. Craig Horrocks, another player on the MSU golf team, testified that Martin hit Sutton with the golf bag. Horrocks stated that neither Martin nor Sutton used profanity during either argument. Hor-rocks testified that Martin’s actions made him embarrassed to be a member of the MSU golf team. Horrocks also testified that Sutton approached Martin during the second argument.
¶ 10. Jamie Easley, a visitor at Old Waverly, testified that the arguments between Martin and Sutton were very loud. He testified that he heard profanity and that Martin either hit Sutton or came close to hitting him. During cross-examination, Martin impeached Easley with Easley’s deposition. In this deposition, Easley stated, “[i]t was looking [sic] like he was pushing him away with the bag.” Easley testified that he believed the incident was inappropriate.
¶ 11. During closing argument, Martin’s attorney stated, “I don’t believe there’s a perfect person. And you don’t have to take my word for it, because that’s what the Bible said: ‘All have sinned and come short of the glory of god.’ ” Martin’s attorney also said, “we crucified the only perfect person and even he [Jesus], as Judge Kitchens noted, lost his temper one time.”
¶ 12. During its deliberation, the jury sent the trial judge a note and asked if they could find for Martin and award no damages. The trial judge replied by telling the jury to read the jury instructions again. The jury returned a verdict of $10,000 for Martin.
¶ 13. In his order granting MSU’s motion for a JNOV, the trial judge specifically found that the jury exhibited bias and prejudice in its verdict because of the question it sent him during deliberation and because he believed the damages awarded did not accurately reflect the evidence. The trial judge also believed the jurors were improperly influenced by the biblical arguments made by Martin’s attorney. The trial court found:
The great quantum of the evidence from disinterested witnesses was that Gregory Martin struck the student in question with a golf bag to the student’s face. Clearly, Martin could not intentionally strike a student under the terms of his employment contract. This action was not done in self-defense nor was an instruction requested at trial which would have allowed the jury to find that he acted in self-defense.
STANDARD OF REVIEW
¶ 14. The standard of review for a JNOV “tests the legal sufficiency of the evidence supporting the verdict, not the weight of the evidence.” Corley v. Evans, 835 So.2d 30, 36(¶ 16) (Miss.2003). When confronted with a motion for a JNOV, the trial judge must:
consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that reasonably may be drawn therefrom. The trial court should consider the evidence offered by *836 the non-moving party and any uncon-tradicted evidence offered by the moving party. If the evidence thus considered is sufficient to support a verdict in favor of the non-moving party, the motion for JNOV must be denied.
Id. at (¶ 17) (citation omitted) (emphasis added). “[I]f there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.” Id. at 37(¶ 19).
ANALYSIS
¶ 15. The only issue before this court is whether the trial court properly granted IHL’s motion for a JNOV.
¶ 16. Under an employment contract, “[a]n employer may discharge an employee (even one hired for a definite term) without incurring liability if just cause exists for terminating the employment contract.” Short v. Columbus Rubber and Gasket Co., 535 So.2d 61, 66 (Miss.1988). Thus, we must review the evidence in the light most favorable to Martin, the non-moving party, to determine if MSU and IHL had just cause to terminate Martin.
¶ 17. IHL argues that it had just cause to terminate Martin under MSU’s “Guidelines for Employee Conduct.” IHL claimed that Martin violated the following employee policies:
Inappropriate employee conduct includes, but is not limited to the following. ... 3. Discourtesy toward co-workers, students, or the public including committing or threatening physical or verbal abuse of others.... 11. Physical altercations.... 14. Behavior of any nature that discredits the University.... 16. Any other actions, behavior, or communications which, as perceived by University officials, adversely affects the University or any sub-unit thereof.
¶ 18. After reviewing the record, it is clear that Martin’s testimony supported the verdict. Martin testified that he and Sutton had an argument. Martin said that neither he nor Sutton used any profanity. Martin also claimed that he merely pushed Sutton away in self-defense because he believed Sutton was going to attack him. This is corroborated by Mooney’s testimony that Sutton came “storming” toward Martin during the second argument. Hor-rocks also testified that Sutton approached Martin during the second argument. Eas-ley testified in his deposition that it appeared Martin pushed Sutton away with the bag. All of the witnesses testified that Martin told Sutton that he did not hit him after the incident.
¶ 19. The following facts support MSU’s argument that it had grounds to fire Martin. Martin testified that he had a heated discussion with Sutton on the Old Waverly driving range. During trial, Mooney, Horrocks, and Easley testified that Martin intentionally hit Sutton. Mooney testified that after the incident, Martin told Mooney that he (Martin) was finished. Horrocks testified that he was embarrassed to be a member of the MSU golf team after the incident, and Easley testified that he believed the incident was inappropriate and that Martin used profanity during the arguments.
¶ 20. During deliberation, the question of whether MSU had just cause to fire Martin was presented to the jury. The jury determined that MSU did not have just cause. After reviewing the above evidence, we find that there is evidence in this case “of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions.” Corley, *837 835 So.2d at 37(¶ 19). Furthermore, the Mississippi Supreme Court has stated, “[i]ssues relating to whether the conduct of a party results in a breach of contract are best left to trial.” Short, 535 So.2d at 67. It was certainly within the jury’s providence to rely upon Martin’s testimony and to reject the testimony of the other witnesses. The jury observed the witnesses, weighed the credibility of the evidence and the witnesses before it, and entered a judgment in favor of Martin. Considering the evidence in the light most favorable to Martin, we are of the opinion that there was sufficient evidence to support the verdict. Therefore, we find that the trial judge erred when he granted IHL’s motion for a JNOV.
¶ 21. In his order granting the JNOV, the trial judge expressed concerns regarding improper comments by Martin’s attorney. The trial judge believed that these comments led to juror bias. The trial judge also believed this conclusion was supported by the fact that the jury asked if it could find for Martin without awarding damages. Mississippi Code Annotated section 11-1-55 (Rev.2002) states that a trial court may grant an additur or remitti-tur, “if the court finds ... [the] trier of facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only.” Thus, the trial court may have been better served to grant IHL’s motion for a new trial or remittitur.
¶ 22. The circuit court’s judgment granting IHL’s motion for a JNOV is reversed. The circuit court also had before it a motion for remittitur or, in the alternative, a motion for a new trial. Mississippi Rule of Civil Procedure 50(c) allows a trial court to grant a motion for a JNOV and make a conditional ruling to grant a motion for a new trial in preparation for the possibility of the JNOV being overturned on appeal. Because the circuit court did not take advantage of this procedure, we are required to render the decision and reinstate the jury’s verdict of $10,000 in favor of Martin.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF OKTIBBEHA COUNTY IS REVERSED AND RENDERED, AND THE JURY VERDICT IS REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE, P.J., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
MYERS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
CHANDLER, J., NOT PARTICIPATING.